## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **RIDER HOTEL, LLC,**[1] | ) **Case No. 22-10522 (JTD)** |
| | ) |
| Debtor. | ) **Hearing Date (Interim Relief Only): July 14, 2022 at 2:00 p.m. (ET)** |
| | ) **Objection Deadline (Interim Relief): At the hearing** |
| | ) |
| | ) **Related to Docket Nos. 40, 50 and 59** |

**EMERGENCY MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; (III) MODIFYING AUTOMATIC STAY;
(IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Rider Hotel, LLC (the "**Debtor**") hereby files this motion (the "**Motion**"), by and through

its undersigned counsel, pursuant to sections 105, 361, 362, 363, 364, 506, 507 and 552 of title 11

of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an interim order,

substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**"): (i) authorizing the

Debtor to use cash collateral; (ii) granting adequate protection to the Lender (defined below);

(iii) setting a final hearing (the "**Final Hearing**") on the Motion to consider the entry of a final

order; and (iv) granting related relief.  In support of the Motion, the Debtor relies on and

incorporates by reference the *Declaration of Timothy J. Dixon in Support of First-Day Motions

and Related Relief* [D.I. 24] (the "**First Day Declaration**"), and respectfully states as follows:

---

[1]     The last four digits of the Debtor's tax identification number are 2426.  The Debtor's mailing address is W6609 Pine Hill Trail, P.O. Box 71, Cascade, WI 53011.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested is sections 105, 361, 362, 363, 364, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

## BACKGROUND

4.      On June 9, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").  The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case and no committee has been appointed.

5.      A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Chapter 11 Case, are set forth in greater detail in the First Day Declaration.

6.      On June 16, 2022, the Court entered the *Agreed Order Approving Stipulation Authorizing the Debtor's Use of Secured Lender's Cash Collateral on a Limited Basis* [D.I. 40]

40151081.2

(the "**First Cash Collateral Stipulation**"), which authorized the Debtor to use Cash Collateral (as defined herein) to fund certain expenses set forth therein.  On June 23, 2022, the Court entered the *Agreed Order Approving Second Stipulation Authorizing the Debtor's Use of Secured Lender's Cash Collateral on a Limited Basis* [D.I. 59] (together with the First Cash Collateral Stipulation, the "**Cash Collateral Stipulations**"), which likewise authorized the Debtor to use Cash Collateral (as defined herein) to fund certain expenses set forth therein.[2]

## THE DEBTOR'S PREPETITION SECURED INDEBTEDNESS

7.     Prior to the Petition Date, the Debtor and Starwood Mortgage Capital LLC, a Delaware limited liability company ("**Starwood**"), entered into a loan facility pursuant to the following documents and instruments: (a) Credit Agreement, dated January 26, 2015, between the Debtor and Starwood, and all amendments thereto (the "**Prepetition Credit Agreement**"); (b) Promissory Note, dated January 26, 2015, from the Debtor payable to Starwood in the original principal amount of $19,500,000.00 (the "**Note**") and (c) various other documents, instruments and notes including, but not limited to that certain Mortgage, Assignment of Leases and Rents and Security Agreement, each dated January 26, 2015 (the "**Mortgage**" and collectively with the Prepetition Credit Agreement and the Note, the "**Prepetition Loan Documents**" and such loans extended thereunder, the "**Prepetition Loans**").   On information and belief, Starwood subsequently assigned the Prepetition Loan Documents and related documents, instruments and notes to RSS GSMS2015-GC28-WI RH, LLC (the "**Lender**").[3]

---

[2]     On June 22, 2022, the *Emergency Motion of the Debtor for Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Scheduling a Final Hearing; and (III) Granting Related Relief* [D.I. 50] was filed with the Court (the "**Prior Cash Collateral Motion**").  The instant Motion replaces and supersedes the Prior Cash Collateral Motion in its entirety.

40151081.2

8.      The Prepetition Loans and the other "Obligations" (as defined in the Prepetition Credit Agreement) of the Debtor owing to the Lender are secured by, *inter alia*, that certain Guaranty of Timothy J. Dixon, dated January 26, 2015 (the "**Guaranty**").

9.      In connection with the Prepetition Loan Documents, the Lender filed a UCC-1 Financing Statement with the Delaware Secretary of State on April 23, 2015, designated as filing number 20151860153 (the "**Financing Statement**").  The Financing Statement was subsequently assigned to Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of GS Mortgage Securities Co. on May 5, 2015, as filing number 0151737120, which was continued on October 31, 2019, as filing number 20197632024, and then assigned to the Lender on October 19, 2021 as filing number 20218372675.

10.     As of the Petition Date, the Debtor is indebted to the Lender under the Prepetition Loan Documents in the aggregate amount of approximately $17,650,000, plus accrued and unpaid interest, fees and expenses (the "**Prepetition Obligations**").

11.     Upon information and belief, the Prepetition Obligations are secured, pursuant to the Prepetition Loan Documents, by perfected first-priority liens and security interests granted by the Debtor upon all of the "Collateral" (as defined in the Security Agreement) existing as of the time immediately prior to the Petition Date, which would include Cash Collateral (collectively, together with any other property of, among other things, the Debtor's estate in which a lien or security interest has been granted to or for the benefit of the Lender immediately prior to the Petition Date, the "**Prepetition Collateral**").

12.     The Debtor requires immediate access to the use of cash collateral (the "**Cash Collateral**") on an emergency basis.  The Debtor's ability to use Cash Collateral in accordance with the Cash Collateral Stipulations expires on July 13, 2022.  In the absence of prompt assurance

40151081.2

that the Debtor may access Cash Collateral after this date, the Debtor will be unable to continue operating its business during the Chapter 11 Case, preserve the value of its estate for the benefit of all parties in interest or administer a value-maximizing chapter 11 process. The Debtor does not have sufficient cash and financing otherwise available to operate its business, and the results of operating on such limited liquidity would cause immediate and irreparable harm to the Debtor's business and its estate.

13.     The Debtor submits that the Lender, to the extent of its valid and perfected liens on the Prepetition Collateral, will be adequately protected notwithstanding Debtor's use of Cash Collateral. As demonstrated by the Debtor's projected budget (the "**Budget**"), a copy of which is attached to the Interim Order as Exhibit 1, the Debtor will operate with positive cash flow through at least August 9, 2022.

14.     Moreover, the Lender, to the extent of its valid and perfected liens on the Prepetition Collateral, will be adequately protected by a sufficient equity cushion in the Prepetition Collateral. Indeed, upon information and belief, the value of the Debtor's Iron Horse Hotel (the "**Hotel**") may be at least $26,000,000.00. The Debtor also anticipates generating significant cash from its operations that it can to use to satisfy obligations associated with the Hotel. The anticipated cash revenues during the Interim Period, in combination with the use of Cash Collateral, will allow the Debtor to continue to satisfy its obligations and preserve the Debtor's business.

15.     The use of Cash Collateral will further be sufficient to meet the Debtor's post-petition operating needs. If not for use of the Cash Collateral, due to the Debtor's overall financial position, the Debtor is unable to obtain (1) adequate unsecured credit allowable under sections 503(b)(1) or 364(c)(1) of the Bankruptcy Code as an administrative expense, (2) unsecured credit

40151081.2

allowable under section 364(a) or (b) of the Bankruptcy Code, (3) unsecured credit entitled to priority under section 364(c)(1) of the Bankruptcy Code, or (4) adequate secured credit under section 364(c)(2), (c)(3) or (d)(1) from any source other than the Lender that would be sufficient to enable the Debtor to continue its business operations.

16.    For the foregoing reasons, the Debtor's continued use of Cash Collateral is necessary to preserve the value of its estate and maximize value for the benefit of all stakeholders. Under the proposed Interim Order (and any Final Order), the Debtor's use of Cash Collateral is subject to certain limitations (set forth below), including that the Debtor may only use Cash Collateral in accordance with the agreed-upon Budget.

17.    In addition, the Debtor and the Lender negotiated the proposed general terms of the Debtor's use of Cash Collateral in good faith and at arms' length and the Debtor believes that the terms on which the Lender ultimately agreed to permit the Debtor to use Cash Collateral are the most favorable terms the Debtor reasonably could have achieved under the circumstances. Considering the overarching benefits of a negotiated and consensual cash collateral order, the Debtor submits that it should be authorized to use Cash Collateral on the terms described herein. *See* 11 U.S.C. § 363(c)(2) (stating that a court may authorize use of cash collateral if "each entity that has an interest in such cash collateral consents").

### **BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2 CONCISE STATEMENT**[4]

18.    Pursuant to Bankruptcy Rules 4001(b)(1) and (d) and Local Rule 4001-2(a)(ii), the Debtor submits the following concise statement of the material terms of the Interim Order:

---

[4]    Any summary of the terms of the Interim Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order. To the extent there is a conflict between the Motion and the Interim Order, the Interim Order shall control. The Debtors reserve the right to supplement the statements made herein.

40151081.2

| Material Provisions/ Essential Terms | Summary | Location |
|---|---|---|
| **Entities with an Interest in Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(i)* | RSS GSMS2015-GC28-WI RH, LLC | N/A |
| **Purposes for the Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(ii)* | To avoid immediate and irreparable harm to its business, the Debtor requests access to Cash Collateral on an interim and final basis to fund the operation of the Debtor's business in the ordinary course postpetition, in accordance with the Budget.  The ability to use Cash Collateral will provide the Debtor with the funds necessary to (a) satisfy postpetition operating expenses, as more fully described and subject to the limitations in the Budget, (b) pay certain prepetition obligations of the Debtor as set forth in the Budget and further described in any first day motions, and (c) pay restructuring expenses, in accordance with the Budget. | Interim Order ¶ G |
| **Duration of the Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(iii)* *Local Rule 4001-2(a)(i)(M)* | The Debtor is authorized to use Cash Collateral until an Event of Default has occurred under the Interim Order. "Events of Default" include the following: <ul><li>The Debtor's failure to maintain appropriate insurance for the Prepetition Collateral, Cash Collateral or the Adequate Protection Collateral;</li><li>The Debtor fails to provide when due, any reports or accounting information or access to the Debtor's property reasonably required by the Interim Order;</li><li>Any termination by the Court of the Debtor's use of Cash Collateral;</li><li>Failure to make any Adequate Protection Payment when due;</li><li>The effective date of a closing of the sale of substantially all of the Debtor's assets that pays the Lender in full;</li><li>The effective date of a confirmed chapter 11 plan in this Chapter 11 Case;</li><li>The date the Debtor files or otherwise supports any motion, pleading, or other document that materially, negatively affects the Lender, including under a plan of reorganization, without the prior written consent of the Lender; provided, that if, pursuant to a plan of reorganization, the Prepetition Obligations and any Adequate Protection Obligations are paid in full on the effective date of such plan, such consent shall not be required;</li></ul> | Interim Order ¶ 10 |

40151081.2

| | | |
|---|---|---|
| | • Five (5) business days after the expiration of the Budget unless a supplemental Budget has been agreed upon by the Debtor and the Lender; and<br><br>• The date (a) any court enters an order dismissing the Chapter 11 Case, converting the Bankruptcy to a case under chapter 7 of the Bankruptcy Code, appointing a trustee, responsible officer, or examiner with expanded powers relating to the operation of the organization in the Chapter 11 Case, or terminating the Debtor's exclusivity under Bankruptcy Code section 1121, unless consented to in writing by the Lender, or (b) the Debtor applies for, consents to or acquiesces in any such dismissal, conversion, or appointment. | |
| **Adequate Protection and Economic Terms**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(i)(B)* | As adequate protection, the Lender is granted the following:<br><br><u>Adequate Protection Liens</u>: As adequate protection against any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, effective as of the Petition Date, the Lender is granted, solely to the extent of any actual diminution in value, if any, of the Prepetition Collateral, valid, binding, continuing, enforceable, fully perfected, first priority senior (subject only to the Carve-Out) replacement liens on and security interests in any and all tangible and intangible pre- and postpetition property of the Debtor, whether existing before, on or after the Petition Date, together with any proceeds thereof.  The Adequate Protection Liens shall be junior only to the Carve-Out.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.<br><br><u>Adequate Protection Superpriority Claim</u>: Subject and subordinate only to the Carve-Out, the Adequate Protection Obligations due to the Lender will constitute allowed superpriority administrative expense claims against the Debtor in the amount of any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral.<br><br><u>Adequate Protection Payments</u>: The Debtor shall pay $97,648.38 to the Lender on account of all accrued and unpaid interest and principal (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) at the non-default rates and consistent with the ordinary course interest payment dates set forth in the Loan Documents.<br><br><u>Right to Credit Bid</u>.  Subject to a Final Order, the Lender shall have rights under section 363(k) of the Bankruptcy Code to the extent of the full amount (or any portion of) the Prepetition Obligations, including but not limited to any reorganization plan under section 1129(b)(2)(A)(iii) of the Bankruptcy Code. | Interim Order, at<br>¶ 5 |
| **Amount of Cash Collateral**<br><br>*Local Rule 4001-2(a)(i)(A)* | The Debtor shall be allowed to use Cash Collateral in the amount set forth in the Budget, subject to the Permitted Variance. | Interim Order, at<br>¶¶ 2, 3, 4<br><br>Exhibit 1 |

8

| | | |
|---|---|---|
| **Limitation of Court's Power to Enter Future Orders**<br><br>*Local Rule 4001-2(a)(i)(C)* | None | N/A |
| **Funding of Non-Debtor Affiliates**<br><br>*Local Rule 4001-2(a)(i)(D)* | None | N/A |
| **Conditions to Closing and Borrowing**<br><br>*Local Rule 4001-2(a)(i)(E)* | Budget – An budget is attached to the Interim Order as Exhibit 1 (the "**Budget**"). The Debtor's use of cash collateral is subject to and governed by terms of the Budget, subject to:<br><br>• a permitted positive variance that would not cause the total operating disbursements of the Debtor for the immediately preceding two (2) weeks to be greater than one-hundred ten percent (110%) of the then-current Budget over the corresponding time period, unless the amount of such variance above one-hundred ten percent (110%) is less than or equal to the positive variance with respect to aggregate revenues and collections of the Debtor for the same period, and<br>• a permitted negative variance that would not cause the total operating receipts of the Debtor for the immediately preceding two (2) weeks to be an amount less than ninety percent (90%) of the then-current Budget over the corresponding time period, and then weekly on a rolling basis thereafter, unless the amount of such variance below ninety percent (90%) is less than or equal to the negative variance with respect to aggregate expenses and disbursements of the Debtor for the same period.<br><br>Further, the Debtor is also required to comply with certain reporting requirements, including the preparation and submission of bi-weekly Variance Reports. | Interim Order ¶¶ 4, 6 |
| **Carve-Out**<br><br>*Local Rule 4001-2(a)(i)(F)* | The "Carve-Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below); (b) all reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below) or 1104(a); (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all Professional Fees incurred by Professional Persons at any time before delivery by the Lender of a Carve-Out Trigger Notice, subject to the line-item limits on such Professional Fees as set forth in the Budget through the date of delivery of a Carve-Out Trigger Notice (with, in the event of a mid-week delivery of a Carve-Out Trigger Notice, the budgeted Professional Fees for such week pro-rated to the date of delivery of the Carve-Out Trigger Notice); and (d) Professional Fees in an aggregate amount not to exceed $25,000 incurred following delivery by the Lender of the Carve-Out Trigger Notice, to the | Interim Order, at ¶ 12 |

| | | |
|---|---|---|
| | extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in clause (d) being the "Carve-Out Trigger Notice Cap"). | |
| **Liens on Unencumbered Assets**<br><br>*Local Rule 4001-2(a)(i)(G)* | Effective as of the Petition Date, the Lender is granted, solely to the extent of any actual diminution in value, if any, of the Prepetition Collateral, valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests in any and all tangible and intangible pre- and postpetition property of the Debtor, whether existing before, on or after the Petition Date, together with any proceeds thereof.<br><br>Subject to the entry of a Final Order, this includes liens on any claims or causes of action of the Debtor arising under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof. | Interim Order ¶ 5(i) |
| **Milestones**<br><br>*Local Rule 4001-2(a)(i)(H)* | None | N/A |
| **Prepayment Penalty**<br><br>*Local Rule 4001-2(a)(i)(I)* | None | N/A |
| **Joint Liability**<br><br>*Local Rule 4001-2(a)(i)(J)* | None | N/A |
| **Investigation of Liens and Claims of Lender**<br><br>*Local Rule 4001-2(a)(i)(L)* | The Debtor's Stipulations shall be binding on third parties unless challenged by no later than a date that is the later of (i) 75 days after entry of the Interim Order; (ii) with respect to any Challenge Proceeding (as defined in the Interim Order) against the Lender, any such later date agreed to in writing by the Lender; or (iii) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, provided that such order is entered before the expiration of any applicable period as set forth in clauses (i) through (ii) above. | Interim Order ¶ 16 |
| **Cross-Collateralization**<br><br>*Local Rule 4001-2(a)(i)(N)* | The Interim Order does not provide for cross-collateralization, other than replacement liens and superpriority claims as adequate protection. | Interim Order ¶¶ 5(i), (ii) |
| **Roll Up**<br><br>*Local Rule 4001-2(a)(i)(O)* | None | N/A |

40151081.2

| | | |
|---|---|---|
| **Non-Consensual Priming Liens**<br><br>*Local Rule 4001-2(a)(i)(P)* | None | N/A |
| **Provisions or Findings That Bind Parties as to Lender's Liens or Claims**<br><br>*Local Rule 4001-2(a)(i)(Q)* | The Interim Order contains acknowledgements, representations, stipulations and agreements of the Debtors (the "**Debtor's Stipulations**"). The Debtor's Stipulations include stipulations with respect to the validity, perfection, and amount of the liens and claims of the Lender. The Debtor's Stipulations are binding upon the Debtor and any successors upon the entry of the Interim Order. The Debtor's Stipulations shall be binding upon all other parties in interest unless an objection is filed within the applicable Challenge Period (as defined in the Interim Order). The Interim Order grants a release by the Debtors of all claims against the Lender arising prior to the Petition Date. This release shall be effective upon the entry of the Interim Order subject to the challenge rights of parties in interest filed within the applicable Challenge Period. The Challenge Period for a party in interest is 75 days after the entry of the Interim Order. | ¶¶ E, 16 |
| **Immediate Approval of Underlying Loan Agreement**<br><br>*Local Rule 4001-2(a)(i)(R)* | N/A | N/A |
| **Modification of Automatic Stay**<br><br>*Local Rule 4001-2(a)(i)(S)* | The automatic stay is modified to the extent necessary to effectuate all of the terms and provisions of the Interim Order, including to: (a) permit the Debtor to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtor to perform such acts as the Lender may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the Lender under this Interim Order; (d) authorize the Debtor to pay, and the Lender to retain and apply, any payments made in accordance with the terms of this Interim Order; and (e) permit the Lender to exercise all rights and remedies provided for in the Interim Order. | Interim Order ¶ 9 |
| **Limitations on Issues at Emergency Hearing During the Remedies Notice Period**<br><br>*Local Rule 4001-2(a)(i)(T)* | During the Remedies Notice Period, the Debtors and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court; provided, however, that to the extent that the Debtor or any other parties in interest seeks an emergency hearing for a purpose other than contesting whether an Event of Default has occurred or is continuing or for the contested use of Cash Collateral, the professional fees and expenses incurred by the Debtor or the party in interest shall not be paid from Cash Collateral. | Interim Order ¶ 11 |
| **Liens on Chapter 5 Causes of Action**<br><br>*Local Rule 4001-2(a)(i)(U)* | Subject to the entry of a Final Order, "Adequate Protection Collateral," which is subject to the Adequate Protection Liens, will include any claims or causes of action of the Debtor arising under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof. | Interim Order ¶ 5(i) |

11

| | | |
|---|---|---|
| **Section 506(c) Waiver**<br><br>*Local Rule<br>4001-2(a)(i)(V)* | Upon entry of the Final Order, except the extent of the Carve-Out, no costs of administration may be surcharged against the Lender or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise. | Interim Order<br>¶ 12 |
| **Section 552(b)(1)<br>"Equities of the Case<br>Doctrine" Waiver**<br><br>*Local Rule<br>4001-2(a)(i)(W)* | Upon entry of a Final Order, the Lender is entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and no person may assert an "equities of the case" claim under this section against the Lender. | Interim Order<br>¶ 13 |
| **Equitable Doctrine of<br>Marshalling Waiver**<br><br>*Local Rule<br>4001-2(a)(i)(X)* | Upon the entry of a Final Order, the Lender shall not be subject to the equitable doctrine of marshalling or any other similar doctrine. | Interim Order<br>¶ 14 |

19.     In addition to the foregoing terms, the Interim Order requires that the proceeds of the Cash Collateral be used exclusively for the expenditures set forth in the Budget.

## **RELIEF REQUESTED**

### A.     **The Debtor's Use of Cash Collateral is Necessary**

20.     A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2).

21.     It is essential to the Debtor's reorganization prospects and its administration of a value-maximizing chapter 11 process that it has sufficient funds to operate in the ordinary course and at a level that is on par or as close as possible to prepetition performance and in accordance with the Budget.  Absent the use of Cash Collateral, the Debtor will not have sufficient working capital to: (a) make payments to employees, vendors, or suppliers, (b) satisfy operating costs, or (c) fund the administrative costs of these chapter 11 cases.  The ability to satisfy these expenses

12

when due is essential to avoid immediate and irreparable harm to the Debtor's estate. In the normal course of business, the Debtor largely uses cash on hand and cash flow from operations to fund working capital and capital expenditures, and operate and maintain its business and property. Absent immediate access to cash collateral, the Debtor will not have adequate unencumbered cash on hand to pay these critical expenses.

**B.    The Proposed Adequate Protection is Reasonable and Appropriate**

22.    Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

23.    The Bankruptcy Code does not expressly define "adequate protection." Section 361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate protection and specifically includes replacement liens. *See* 11 U.S.C. § 361. Section 361(3) of the Bankruptcy Code further goes on to provide the flexible concept that adequate protection may also take other forms, so long as the relief "will result in the realization by [creditor] of the indubitable equivalent of such [creditor's] interest in [cash collateral]." *See* 11 U.S.C. § 361.

24.    Generally, courts decide what constitutes "adequate protection" on a case-by-case basis. *See, e.g., Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in

the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis*"); see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding") (internal citation omitted).

25.    In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for.").

26.    As a condition to the use of Cash Collateral, the Lender required an adequate protection package consisting of Adequate Protection Liens, Adequate Protection Superpriority Claims and Adequate Protection Payments, as defined in the Interim Order (collectively, the "**Adequate Protection**").

27.    The Debtor submits that the proposed Adequate Protection will sufficiently protect the Lender from any diminution in value of the Prepetition Collateral during the pendency of this Chapter 11 Case and preserve the value for which the Lender bargained.  Without access to Cash Collateral, the Debtor will be unable to continue operating.  The Adequate Protection is thus necessary and sufficient for the Debtor to continue to use Cash Collateral.  In light of the foregoing, the Debtor submits that the proposed Adequate Protection to be provided for the benefit of the Lender is appropriate.  The proposed Adequate Protection is not only necessary to protect the Lender against any diminution in value, but is also fair and appropriate on an interim basis under

14

the circumstances of this Chapter 11 Case to ensure the Debtor is able to continue using the Cash

Collateral in the near term for the benefit of all parties in interest and the Debtor's estate.

**C.      The Scope of the Proposed Carve-Out is Reasonable and Appropriate**

28.      The Adequate Protection is subject to the Carve-Out. Without it, the Debtor and

other parties in interest may be deprived of certain rights and powers because the services for

which professionals may be paid in this Chapter 11 Case would be restricted.  *See, e.g., In re Ames*

*Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-

outs for professionals representing parties in interest because "[a]bsent such protection, the

collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve-Out

does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible

rights and powers.  Additionally, the Carve-Out protects against administrative insolvency during

the course of this Chapter 11 Case by ensuring that assets remain for payment of the United States

Trustee fees and professional fees of the Debtor.  For these reasons, the Debtor believes that the

proposed Carve-Out is reasonable and appropriate and should be approved.

**D.      The Automatic Stay Should Be Modified on a Limited Basis**

29.      The relief requested herein contemplates a modification of the automatic stay to

(a) permit the Debtor to grant the Adequate Protection Liens and the Adequate Protection

Superpriority Claims; (b) permit the Debtor to perform such acts as the Lender may request in its

reasonable discretion to assure the perfection and priority of the liens granted in the Interim Order;

(c) permit the Debtor to incur all liabilities and obligations to the Lender under the Interim Order;

and (d) subject to the Carve Out, authorize the Debtor to pay, and the Lender to retain and apply,

payments made in accordance with the terms of the Interim Order.  The relief requested herein

further contemplates that the automatic stay will be further modified and vacated to the extent

40151081.2

necessary to permit the Lender to exercise the rights and remedies available to it under the Prepetition Loan Documents, the Interim Order, or applicable law, as applicable, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral in order to collect and satisfy the Obligations and Adequate Protection Obligations, in accordance with the Interim Order. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtor's business judgment, are reasonable and fair under the circumstances.

**E.    Interim Relief Should Be Granted**

30.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the court is authorized to conduct an interim expedited hearing on the motion at which it may authorize a debtor to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. *See* Fed. R. Bankr. P. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

31.    Pending the Final Hearing, the Debtor requires immediate access to Cash Collateral to satisfy the day-to-day needs of the Debtor's business operations. Access to liquidity will help to address any concerns of employees, vendors or customers regarding the Debtor's financial health and ability to continue operations in light of this Chapter 11 Case. The Debtor has an immediate need for liquidity to, among other things, maintain business relationships with its customers, vendors and suppliers, pay payroll and certain benefits, and satisfy other essential

16

40151081.2

working capital and operational needs, all of which are required to preserve and maintain the Debtor's going concern value for the benefit of all parties in interest. In addition, the Budget establishes that the Debtor's use of Cash Collateral will not prejudice the Lender.

32.     Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtor requests an expedited hearing to consider the Motion and entry of the Interim Order authorizing the Debtor's use of Cash Collateral.

### BANKRUPTCY RULE 4001(a)(3) SHOULD BE WAIVED

33.     The Debtor requests a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). As explained above and in the First Day Declaration, the use of Cash Collateral is essential to prevent irreparable damage to the Debtor's operations. Accordingly, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

34.     Additionally, with respect to any aspect of the relief sought in this Motion that constitutes a use of property under Bankruptcy Code section 363(b), the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to preserve the value of its estate. The Debtor thus submits that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is here appropriate.

40151081.2

## **RESERVATION OF RIGHTS**

35.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

36.    Notice of this Motion shall be given to: (i) the Office of the United States Trustee for the District of Delaware;  (ii) the Debtor's 20 largest unsecured creditors; (iii) counsel to RSS GSMS2015-GC28-WI RH, LLC; (iv) the United States Attorney for the District of Delaware; (v) the United States Attorney for the Eastern District of Wisconsin; (vi) the Internal Revenue Service; (vii) P.A. Management LLC; (viii) counsel to Highgate Hotels, L.P.; (ix) the Banks; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.


*[Remainder of page intentionally left blank]*

40151081.2

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Order, and pending a final hearing, a final order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 12, 2022

**SAUL EWING ARNSTEIN & LEHR LLP**

By:    */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19801
Telephone: (302) 421-6800
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Michael L. Gesas (admitted *pro hac vice*)
Barry A. Chatz (admitted *pro hac vice*)
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
michael.gesas@saul.com
barry.chatz@saul.com

-and-

**CARLSON DASH, LLC**
Kurt M. Carlson (admitted *pro hac vice*)
Martin J. Wasserman (admitted *pro hac vice*)
C. Douglas Moran (admitted *pro hac vice*)
10411 Corporate Dr., Suite 100
Pleasant Prairie, WI 53158
Telephone: 262-857-1600
kcarlson@carlsondash.com
mwasserman@carlsondash.com
cdmoran@carlsondash.com

*Counsel for Rider Hotel, LLC*

40151081.2