, ,

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| In re: | : | Chapter 11 |
|---|---|---|
| RIDER HOTEL, LLC,[1] | : : : | Case No: 22-10522 (JTD) |
| Debtor. | : : | Objection Deadline: January 17, 2023 @ 4:00 p.m |
| | : : : | Hearing Date: February 28, 2023 @ 11:00 a.m. |

## OBJECTION TO DEBTOR'S MOTION TO FURTHER EXTEND THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON

Florida Lofts, LLC ("**Florida Lofts**") objects to the Debtor's motion to extend the period in which the Debtor has the exclusive right to file a chapter 11 plan through April 5, 2023 and to extend the period in which the Debtor has the exclusive right to solicit acceptances of a chapter 11 plan through June 5, 2023 [D.I 245] (the "**Motion**"), and requests that the Court deny the Motion. In opposition to the Motion, Florida Lofts states:

### Jurisdictional Issues

1.     Florida Lofts agrees this Court has subject matter jurisdiction, venue is proper and this is a core proceeding, and consents to this Court entering a final order if consent is necessary.

### Factual Background

2.     The basic facts surrounding Florida Lofts' relationship with the Debtor were made part of the Court's record with respect to the Debtor's motion to extend the automatic stay to additional parties. (D.I. 207, the "**Automatic Stay Motion**.")

---

[1] The last four digits of the Debtor's tax identification number are 2426. The Debtor's mailing address is W6609 Pine Hill Trail, P.O. Box 71, Cascade, WI 53011.

, ,

123088596-1

3.      Florida Lofts entered into a lease with Dixon Development, LLC ("**Dixon Development**") for a parking structure adjacent to the Debtor's hotel. Timothy Dixon ("**Mr. Dixon**") and the Debtor guaranteed Dixon Development's obligations under the lease. (Automatic Stay Motion, ¶ 11).

4.      By the Automatic Stay Motion, the Debtor sought to extend the protections of the automatic stay to Dixon Development and Mr. Dixon. The Court denied the Automatic Stay Motion. [D.I. 253].

5.      In the current Motion, the Debtor seeks to extend its exclusive periods under § 1121 of the Bankruptcy Code to file a plan and obtain acceptance of the plan.

6.      The Debtor filed its chapter 11 petition on June 9, 2022.

7.      The Debtor previously moved on October 5, 2022 for the entry of an order extending its exclusive period for filing a plan until February 6, 2023 and its exclusive period for obtaining acceptance of a plan through April 5, 2023. [D.I. 162], the "**First Exclusive Period Motion**.")

8.      The Court granted the First Exclusive Period Motion, but only extended the Debtor's exclusive period to file a chapter 11 plan through January 5, 2023 and the Debtor's exclusive period for obtaining acceptance of a chapter 11 plan through March 6, 2023. [D.I. 177].

9.      The Debtor states that it seeks approval of this Motion "[t]o ensure that the Chapter 11 Case continues to progress in an effective and efficient manner." (Motion, ¶ 10.)

**Basis for Objection**

10.    Section 1121(d) of Bankruptcy Code allows a court to extend a debtor's exclusive time to file a plan, and the related time to obtain acceptance of the plan by impaired classes. It provides:

> (d)(1) Subject to paragraph (2), on request of party in interest made within the respective periods specified in subsections (b) and (c) of this section [establishing the 120-day exclusivity period to file a plan and the 180-day exclusive period to obtain acceptances] and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> > (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
> >
> > (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11.    The factors establishing "cause" are not identified in § 1121. The legislative history of the Code provides guidance.

> First, the legislative history reveals the intent to facilitate the rehabilitation of the debtors in Chapter 11, and therefore the party requesting an extension of the exclusivity period has the burden of establishing good cause. The legislative history also reveals that Congress intended that the granting of an extension would be based "on a showing of some promise of probable success [for reorganization]." Furthermore, "[a]n extension should not be employed as a tactical measure to put pressure on parties in interest to yield to a plan they consider unsatisfactory." [Citations omitted].

*In re Hoffinger Industries, Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003).

12.    A variety of factors have been cited as contributing to the "cause" necessary to extend exclusivity:

> (a) the size and complexity of the case; (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has

3

demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists.

*In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006)). *See also Hoffinger*, 292 B.R. at 643-44 (providing similar list).

13.    In considering a request for an extension of a debtor's exclusive plan periods, a court must "consider the history and purpose of § 1121 and the competing interests which Congress sought to balance when it enacted these time tables." *Matter of All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990).

14.    "The bankruptcy court must avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings under the old Chapter XI. Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

**I.    The Debtor bears the burden to establish the existence of cause to extend the exclusive period.**

15.    The party seeking an extension bears the burden to establish the existence of cause to extend the exclusive period. *In re Pine Run Tr., Inc.*, 67 B.R. 432, 434 (Bankr. E.D. Pa. 1986); *Borders Grp., Inc.*, 460 B.R. at 821. Extensions are not to be granted routinely or cavalierly. *Id.*

4

16.     For the moving party to meet its burden in establishing cause, it must produce affirmative evidence in support of a finding of cause. *Borders Grp., Inc.*, 460 B.R. at 821.

17.     A court has broad discretion to determine whether a movant has proven that cause exists. *Id.*; *All Seasons Indus., Inc.*, 121 B.R. at 1004.

**II.     The Debtor has not established cause to extend the exclusive periods.**

18.     In the Motion, the Debtor discusses four of the factors contributing to cause: its progress in the case, its payment of post-petition obligations, the period the case has been pending, and the Debtor's view of the prejudice to creditors by an additional delay. In doing so, the Debtor both overstates its case for cause under the factors discussed, and omits any discussion of the factors weighing against a finding of cause.

**a.     The Debtor has not demonstrated good faith progress toward reorganization.**

19.     The Debtor's discussion of the "progress" it has made in the case misses a crucial point. A debtor must show progress ***toward reorganization***. *Borders Grp., Inc.*, 460 B.R. at 822. When a debtor is stalled or at an impasse in negotiations with creditors on plan terms, it is unlikely that an extension of the exclusive period will significantly improve the progress of reorganization. *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 488 (Bankr. D. Conn. 2007); *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 601 (Bankr. S.D.N.Y. 2014).

20.     Nearly all of the circumstances cited by the Debtor as evidence of its "progress" in the case are merely the tasks required of a chapter 11 debtor to maintain its case. This includes obtaining first day relief, using cash collateral, filing bankruptcy schedules, operating its business, attending to other administrative tasks, and making and complying with its cash collateral budget.

(Motion, ¶¶ 19-20.) These examples do not establish that the Debtor is making progress toward reorganization. They merely show that the Debtor is doing the minimum to stay in chapter 11.

21.      Other circumstances invoked by the Debtor with respect to its "progress" are highly speculative and vague. It mentions "working to obtain financing from local sources" and "evaluating alternatives for a proposed plan of reorganization." (Motion, ¶ 20.) Without further support, these statements are hardly sufficient to establish progress toward reorganization. How close has the Debtor come to obtaining financing? How much time does the Debtor need to evaluate possible plans of reorganization? How much progress has it actually made in formulating a plan? The questions are left unanswered by the Debtor.

22.      At the hearing on January 3, 2023 on the Automatic Stay Motion, the Court found that the Debtor had not shown the ability to successfully reorganize in order to meet the "reasonable likelihood of success" prong of an injunction.[2] The evidence demonstrated that this is a two-party dispute between the mortgage lender and the Debtor. There is no committee. No other creditor, until Florida Lofts appeared to contest the Automatic Stay Motion, has actively participated. Effectively, the Debtor has been negotiating with its lender since April 2020 – nearly three years. Efforts to obtain financing to take out the lender have failed.

23.      Based upon the Automatic Stay Motion evidence, and as the Court implicitly found, this case is going nowhere. The Debtor has demonstrated no outside sources of funds. In fact, at the hearing on the Automatic Stay Motion, Mr. Dixon testified that the Debtor's investment banker

---

[2] *See, LTL Mgmt., LLC v. San Diego Cnty Emps. Ret Ass'n*, 640 B.R. 322, 335 (Bankr. D.N.J. 2022) ("reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize").

123088596-1

had been unsuccessful in its efforts to find financing.  Indeed, the Debtor sought to protect Mr.

Dixon and Dixon Development from a $69,000 judgment.

24.     Further, interest rates have gone up. The prime rate is presently at 7.5%. If the *Till*

prime-plus formula were used, the interest rate would be between 8.5% and 10.5%.[3]   On

information and belief, the current interest rate on the Debtor's obligation with its lender is

approximately 4.4%. If the Debtor could not service a 4.4% rate, it is unlikely the Debtor can

service a 7.5% to 10.5% rate.

25.     The logical conclusion is that the Debtor cannot reorganize. It needs major

concessions from its lender that it has been unable to obtain for nearly three years.

26.     And finally, the Debtor cites its efforts to extend the automatic stay to Mr. Dixon

and Dixon Development in the Automatic Stay Motion as evidence of its progress toward

reorganization. (Motion, ¶ 20.) As the Debtor was unsuccessful in the Automatic Stay Motion, this

can hardly be counted as progress toward reorganization.

**b.     The requested extension is prejudicial to creditors.**

27.     The Debtor claims that the extension it seeks will not harm the creditors or other

parties in interest. (Motion ¶ 25.) The Debtor makes this claim without any support or justification.

28.     In fact, Florida Lofts will be prejudiced by an additional extension of the Debtor's

exclusive period. Florida Lofts intends to file a proposed plan which would result in it owning the

Debtor or its business. Florida Lofts owns the parking structure adjacent to the Debtor's hotel. As

---

[3] *Till v. SCS Credit Corp.*, 541 U.S. 465, 480 (2004)

Mr. Dixon testified, having a convenient parking structure is important to hotel patrons. Florida Lofts has the financial wherewithal to consummate a transaction.

29.    The Debtor's proposed extension only serves to delay Florida Lofts in moving forward with its plan, to the Debtor's benefit and Florida Lofts' detriment.

30.    Allowing the Debtor to extend its exclusive plan period without demonstrating tangible reasons for the need to do so prejudices Florida Lofts. It creates an imbalance between debtor and creditor reminiscent of Chapter XI of the Bankruptcy Act. The Debtor gains undue leverage over Florida Lofts by virtue of its ability to delay.

31.    The Debtor's statutory 120-day exclusive period to file a plan originally ran through October 7, 2022. Through the First Exclusive Period Motion, the Debtor obtained an extension of an additional 90 days, through January 5, 2023. Through this Motion, the Debtor seeks an extension of an additional 90 days, through April 5, 2023.

32.    As this Motion is not scheduled to be heard until February 28, 2023, the Debtor will have already obtained at least 144 days of extensions to its exclusive period to file a plan. There is clearly prejudice to creditors such as Florida Lofts in allowing any further extension.

**c.    Other factors weigh against the requested extension.**

33.    The Debtor invokes two other factors claimed to be in its favor: its payment of post-petition obligations and the period this case has been pending. (Motion, ¶¶ 23-24.) These factors on their face do appear to fall in the Debtor's favor with respect to the extension it seeks.

34.    However, other factors weigh against the Debtor. The Debtor fails to analyze any of the following factors: (a) the size and complexity of the case; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made

8

progress in negotiations with its creditors; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists.

35.    As the Debtor holds the burden to demonstrate the existence of cause for an extension, its silence on these factors may be viewed as a concession that they weigh against an extension. Upon analysis, this appears to be the case.

36.    This case is neither notably large nor notably complex. The Debtor has not demonstrated the need for additional time due to these factors.

37.    Throughout the Motion, the Debtor fails to discuss with any particularity the progress it has made in negotiations with its creditors. The Debtor also omits any discussion of the viability of the consensual plan it claims to be seeking to file. These omissions speak volumes. With the Debtor holding the burden to demonstrate the existence of cause for an extension, neither the creditors nor the Court need to take the Debtor at its word as to the viability of a future plan or the true progress made in negotiations with creditors. The Debtor's lack of disclosure on these topics weighs against a finding of cause.

38.    Likewise, the Debtor's vagueness in the Motion prevents an objective analysis of the Debtor's motivation in seeking an extension of the exclusive period. It is thus at least implied that the Debtor may be doing so in order to pressure creditors to meet its demands.

39.    Lastly, the Debtor does not cite any unresolved contingencies in existence. This factor cannot weigh in the Debtor's favor.

## Conclusion

For these reasons, Florida Lofts requests that the Court deny the Motion.

9

123088596-1

Dated:   January 17, 2023

/s/ Martin J. Weis
Martin J. Weis (No. 4333)
Dilworth Paxson LLP
704 N. King Street, Suite 500
PO Box 1031
Wilmington, DE  19899-1031
Phone: (302) 571-9800
Email: mweis@dilworthlaw.com

And


Jerome R. Kerkman (Wis. No. 1005832)
Kerkman & Dunn
839 N. Jefferson St., Suite 400
Milwaukee, WI  53202-3744
Phone: (414) 277-8200
Email: jkerkman@kerkmandunn.com

123088596-1