IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| RIDER HOTEL, LLC,[1] | ) Case No. 22-10522 (JTD) |
| Debtor. | ) Related to Docket Nos. 245 and 255 |

**REPLY IN SUPPORT OF MOTION OF THE DEBTOR FOR
ENTRY OF AN ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS
TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON**

Rider Hotel, LLC (the "**Debtor**"), the debtor in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), by and through its undersigned counsel, files this reply in support of its motion (the "**Motion**")[2] for the entry of an order, pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 ("**Bankruptcy Code**"): (a) further extending the period in which the Debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") by approximately 90 days, through and including April 5, 2023; and (b) extending the period in which the Debtor has the exclusive right to solicit acceptances of a chapter 11 plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") by 90 days, through and including June 5, 2023. By way of reply to the *Objection to Debtor's Motion to Further Extend the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Votes Thereon* [D.I. 255] (the "**Objection**") filed by Florida Lofts, LLC ("**Florida Lofts**"), and in further support of its Motion, the Debtor respectfully represents as follows:

---

[1]  The last four digits of the Debtor's tax identification number are 2426. The Debtor's mailing address is W6609 Pine Hill Trail, P.O. Box 71, Cascade, WI 53011.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

41154958.2 02/23/2023

**PRELIMINARY STATEMENT**

While a further extension of exclusivity may frustrate Florida Lofts' efforts to file a competing plan under which it would take over the Debtor's hotel, this is not enough to justify denial of the Motion. The Debtor, in furtherance of its fiduciary obligations to its estate and creditors, intends to file a proposed chapter 11 plan (the "**Plan**") and an accompanying disclosure statement prior to the hearing on the Motion, pursuant to which the Debtor would continue to operate its hotel business without disruption, address and satisfy the allowed claims of creditors, and resolve the Debtor's disputes with its pre-petition secured lender, RSS GSMS2015-GC28–WIRH, LLC ("**RSS**"), among other features. The Debtor believes that the Plan reflects the best path forward for its estate and creditors, intends to move forward in seeking confirmation of this Plan as soon as practicable, and requires continued exclusivity in order to do so in a cost-effective manner and without the distraction and confusion caused by a competing plan. Indeed, the purpose of exclusivity is to provide debtors with the ability to pursue plans that they believe will best serve their estates and creditors without the threat of a competing plan. *See Matter of Mother Hubbard, Inc.*, 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993). Such purpose would be served in granting the Motion in the present case.

The Debtor recognizes that exclusivity cannot continue indefinitely and will be limited to the extent the Debtor does not make meaningful progress within the requested Exclusive Periods. The Debtor also recognizes that its ongoing efforts to reach the plan phase of this Chapter 11 Case may not be apparent from the docket. The Debtor, however, has been working since early Fall to obtain financing to fund a plan. When certain of these efforts were not fruitful, the Debtor immediately shifted gears to focus on an alternative plan structure. Throughout this entire process, the Debtor has maintained consistent dialogue with RSS, which, in recognition of the Debtor's good faith efforts to advance these cases, has permitted the Debtor's continued uses of cash

collateral and consents to the abbreviated extension of exclusivity requested in the Motion. The Debtor has also used the chapter 11 process and the breathing spell afforded by the Bankruptcy Code to streamline and enhance its operations, and has been operating in line or ahead of the cash collateral budget since its bankruptcy filing with a significantly improved cash position, as reflected in the Debtor's monthly operating reports.

With this progress, and for the reasons set forth in the Motion and further demonstrated below, the Debtor believes that it is well positioned to proceed expeditiously towards confirmation of a Plan that will best serve the interests of its estate and creditors, and that "cause" exists to permit a further extension of the Exclusive Periods.

## REPLY

**I.      The Debtor Has Made Good Faith Progress Towards Reorganization**

1.      As reflected in the Motion and the Objection, the standard governing extensions of exclusivity is "cause," and among the factors considered in determining whether "cause" exists is whether a debtor has made good faith progress toward reorganization. *See In re Hoffinger Industries, Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003) (stating that legislative history shows that Congress "intended that the granting of an extension would be based 'on a showing of some promise of probably success [for reorganization]'").

2.      In the present case, contrary to Florida Lofts' contentions, the Debtor *has* demonstrated good faith progress towards reorganization, as will be evidenced by their filing of the Plan and an accompanying disclosure statement in advance of the hearing on this Motion. This is not a "placeholder" plan, but a well thought-out and structured reorganization plan that is premised upon financial projections prepared by the Debtor's financial advisor, in consultation with the Debtor's management and other professionals, and the Debtor's negotiations and agreements with RSS and the Plan Sponsor (as defined in the Plan). The Plan, through cash

3

generated from operations and funding provided by the Plan Sponsors (the commitment for which will be demonstrated by letters of intent accompanying the Plan), contemplates the satisfaction or payment in full of allowed administrative, priority and "other secured" claims, and contains a proposed treatment of RSS's claims that would not only resolve the Debtor's disputes with RSS but also permit a recovery to general unsecured creditors. Ultimately, the provisions of the Plan are not at issue before the Court for purposes of this Motion (and contrary to Florida Lofts' assertions, the Debtor need not demonstrate the "viability" of the Plan at this juncture); however, the fact remains that the Debtor is clearly at a point where it is ready to move these cases to conclusion and the filing of the Plan demonstrates good faith progress towards such reorganization.

3. Notably, in arguing that the description of the Debtor's plan efforts in the Motion were vague, Florida Lofts draws unfounded conclusions about the sufficiency of such efforts and the Debtor's plan prospects in general. Indeed, Florida Lofts jumps to the conclusion, based on the outcome of the Debtor's early efforts to obtain financing and the fact that interests rates have risen, that the Debtor has no prospect of reaching agreement with its lender, and no ability to reorganize. Such conclusions are in fact just opinions and are clearly unfounded, as will be demonstrated by the Plan.

4. Florida Lofts also overstates the Court's comments at the hearing on the Debtor's motion to extend the automatic stay to its principal, Timothy Dixon. To say that the Court "implicitly found" that "this case is going nowhere" is an overstatement, to say the least. The Court made no such finding, and any commentary made at that hearing regarding the Debtor's progress toward a plan was limited to the context of determining whether sufficient evidence was presented for purposes of satisfying the injunction standard. In any event, the circumstances of this Chapter 11 Case have certainly changed since that hearing. A Plan, which is in the final stages

of approval, will be filed in the short term, the Debtor has obtained Court authority to establish a claims bar date [D.I. 281], and the Debtor is taking clear steps toward an exit plan.

**II.     Florida Lofts' Desire to File a Competing Plan is Not a Basis to Deny the Motion.**

5.      Florida Lofts makes clear in its Objection that it seeks to file a competing chapter 11 plan "which would result in it owning the Debtor or its business." Objection, at ¶ 28. As a result, should the Court deny the Motion, there is no doubt that the Debtor will face a competing plan scenario and will be forced to incur the costs and distraction associated with such a scenario, which will deplete estate resources and creditor recoveries and cause uncertainty and confusion, to the detriment of its estate and creditors. This is exactly the scenario that is sought to be avoided through the extension of the Exclusive Periods.

6.      In seeking to file a competing plan of the nature described in the Objection, Florida Lofts is clearly acting to pursue its own business interests, and not with the objective of rehabilitating the Debtor. While there is nothing inherently wrong with a party acting in furtherance of its own business interests, the Debtor is not aware of any authority that supports the termination of exclusivity so that one stakeholder can take a debtor's property for itself.

7.      Moreover, the Debtor believes that any interests of Florida Lofts in filing a competing plan are outweighed where the Debtor has put forth a Plan that it believes will best uphold its fiduciary obligations to its estate and creditors and will avoid disruptions to its operations. Put simply, the Court should not let Florida Lofts take control of this Chapter 11 Case. For several reasons, including but not limited to the Debtor's familiarity with its operations and books and records, its relationships with its vendors and customers, and its vested interest in pursuing a Plan that not only satisfies creditors but also permits it to remain in control of the hotel that it built and has operated since 2008, the Debtor believes that it is in the best position to navigate the path of this Chapter 11 Case.

8. As noted above, the Debtor is aware that exclusivity is not indefinite and that exclusivity would not be further extended without continued meaningful progress during the remainder of the requested Exclusive Filing Period. The Debtor, however, believes that sufficient progress has been demonstrated to date to warrant the relief requested in the Motion and that Florida Lofts' desire to file a competing plan is not a sufficient basis to deny the relief requested.

### III. Lack of Prejudice to Parties in Interest

9. As indicated in the Motion, the Debtor does not believe that the requested extension of the Exclusive Periods will prejudice creditors or parties in interest, nor is the Debtor seeking the extension to pressure creditors to submit to the Debtor's reorganization demands. On the contrary, the extension requested puts the pressure *on the Debtor* to move expeditiously in seeking confirmation of a plan that the Debtor believes will best serve its creditors and will permit its business to continue without disruption.

10. The Debtor recognizes that the requested further extensions of the Exclusive Periods will frustrate Florida Lofts' efforts to file a competing plan but, as noted above, this alone is not (and should not) be sufficient reason to deny the Motion. *See In re PWM Property Management LLC*, Case No. 21-11445 (MFW) (Bankr. D. Del. Mar. 29, 2022) [D.I. 570] (granting extension of exclusivity notwithstanding objection filed by creditor seeking to submit competing plan); *see also In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (listing factors to consider in evaluating "cause" to extend exclusivity under section 1121(d)).

11. Furthermore, notwithstanding Florida Lofts' contentions, the Debtor does not believe that the requested extensions are prejudicial. The bar date in this case will not expire until

March 31, 2023 and, certainly, *any* plan proponent would want to know the full universe of claims before it proceeds with plan solicitation.[3]

12.  While Florida Lofts complains about the length of the exclusivity period in this Chapter 11 Case, it is worth noting that Bankruptcy Code section 1121(d)(2) permits extensions of up to 18 months from a petition date so long as "cause" exists to extend. The Debtor is nowhere near that timeframe, nor does it intend to be near that timeframe. Nine months have passed since the Petition Date, and if the Debtor is able to proceed with the Plan without the distraction of a competing plan, the Debtor hopes to achieve confirmation within the next few months.

### IV.    Other Factors in Determining "Cause"

13.  Florida Lofts argues that because the Debtor did not address each potential factor to be considered in determining whether "cause" exists to extend the Exclusive Periods, such factors must necessarily way *against* granting the extension. Such a contention conflicts with case law providing that no single factor is dispositive in determining whether to extend exclusivity and that courts can choose to rely on only a few factors or even altogether differing factors. *See In re Elder-Beerman Stores Corp.*, No. C-3-97-175, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997); *In re Dow Corning Corp.*, 208 B.R. 661, 669-70 (Bankr. E.D. Mich. 1997) (noting that sometimes certain factors are more important or relevant than others). Nevertheless, the Debtor will address the additional factors raised by Florida Lofts in its Objection:

- <u>Size and Complexity</u>. The Debtor does not dispute that this is a "small" case in that there is only one debtor and less than 100 creditors.[4] That said, the Debtor has significant assets and liabilities, and there can be no dispute that there are meaningful challenges in this case, including the Debtor's disputes with its pre-petition secured lender (which it seeks to address and resolve through the Plan). It

---

[3]   In addition to the foregoing, the claim and standing of Florida Lofts in this Chapter 11 Case remains in dispute and calls into question its ability to propose a plan under Bankruptcy Code section 1121(c).

[4]   Note that because the bar date has not passed, the expectation that there are less than 100 creditors in this Chapter 11 Case is based on the Debtor's records as of the date of this Reply and is subject to change.

should also come as no surprise that in a "smaller" case, the Debtor's management must divide its focus between tasks related to the Chapter 11 Case and tasks needed to ensure that its business continues to operate without disruption. Under these circumstances, the Debtor believes that the size and complexity of this case either weigh in favor of establishing "cause" to extend the Exclusive Periods or, *at a minimum*, do not weight *against* the requested extensions.

- Progress in Negotiations with Creditors. Despite Florida Lofts' contentions to the contrary, the Debtor need not describe the nuances of its negotiations with creditors to establish "cause," nor would it necessarily be appropriate to do so. In any event, the fact that RSS does not oppose the Motion and the Debtor is actively engaged in discussions with RSS on certain remaining points in an effort to ensure that the plan is consensual showcases the status of the Debtor's negotiations with its secured creditor, which holds the largest claim in the case.

- Pressure on Creditors. As noted above, the Debtor is not seeking to extend the Exclusive Periods in order to force creditors to submit to its reorganization demands. On the contrary, the Debtor is seeking to extend the Exclusive Periods simply so that it can pursue confirmation of a plan that it, in good faith, believes will best serve its estate and creditors (not just RSS, and not just Florida Lofts). **The Debtor does not believe parties in interest would be well served by permitting a competing plan to be filed at this time, particularly a competing plan that seeks to disrupt the operations of the hotel.** The costs and resources associated with a competing plan scenario, let alone the confusion that it could cause, warrants an extension of the Exclusive Periods so that the Debtor can pursue confirmation of its Plan. In any case, the Debtor believes that this factor ways in favor of the requested extensions.

- Unresolved Contingencies. The Debtor does not believe this factor weighs for or against an extension of the Exclusive Periods. To the extent RSS's claims remain unresolved, such claims may constitute an unresolved contingency. Likewise, until the bar date passes and the Debtor knows the full scope of claims against its estate, there may be other unresolved contingencies not yet known to the Debtor. These contingencies are no different than the contingences at issue in other bankruptcy cases, where, for example, a plan is premised on a resolution with the debtor's secured lender or where a plan is filed before the claims bar date passes.

14. For all of the foregoing reasons, "cause" exists to extend the Exclusive Periods in the manner set forth in the Motion.

**WHEREFORE**, for the foregoing reasons and the reasons set forth in the Motion, the Debtor respectfully requests that the Court overrule the Objection and (i) further extend the Debtor's Exclusive Filing Period by approximately 90 days, through and including April 5, 2023;

(ii) further extend the Debtor's Exclusive Solicitation Period by 90 days, through and including June 5, 2023, and (iii) grant the Debtor such other and further relief as is just and proper.

Dated: February 23, 2023
Wilmington, Delaware

**SAUL EWING LLP**

By: */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19801
Telephone: (302) 421-6800
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Barry A. Chatz (admitted *pro hac vice*)
Michael L. Gesas (admitted *pro hac vice*)
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
barry.chatz@saul.com
michael.gesas@saul.com

-and-

**CARLSON DASH, LLC**
Kurt M. Carlson (admitted *pro hac vice*)
Martin J. Wasserman (admitted *pro hac vice*)
Douglas Moran (admitted *pro hac vice*)
10411 Corporate Drive, Suite 100
Pleasant Prairie, WI 53158
Telephone: 262-857-1600
kcarlson@carlsondash.com
mwasserman@carlsondash.com
cdmoran@carlsondash.com

*Counsel to the Debtor and Debtor in Possession*