## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**RIDER HOTEL, LLC**<br><br>      Debtor. | **Chapter 11**<br><br>**Case No. 22-10522 (JTD)**<br><br>Hearing Date: October 10, 2023 at 11:00 AM<br>Sale Objection Date: September 20, 2023<br>Cure Objection Date: September 20, 2023<br><br>**Docket Nos. 426 and 468** |

### ORACLE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION, AND RELATED NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

Oracle America, Inc., successor in interest to Nor1, Inc. ("Oracle"), a creditor and contract counterparty in the above-captioned case, submits this limited objection and reservation of rights ("Rights Reservation") regarding the *Debtor's Motion for Entry of (A) An Order (I) Approving Bidding Procedures For the Sale of Substantially All of Debtor's Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Bid Protections, and (V) Approving Contract Assumption and Assignment Procedures, and (B) An Order Authorizing the Debtor to Enter Into a Definitive Purchase Agreement* [D.E. No. 426] ("Sale Motion") and related *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [D.E. No. 468] ("Assumption Notice"), filed by Rider Hotel, LLC ("Debtor").

### I. INTRODUCTION

1. By the Sale Motion and the Assumption Notice, the Debtor seeks Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtor and Oracle.

2. Oracle objects to the proposed assumption and assignment on multiple grounds.

        a)        First, Oracle's agreements with the Debtor are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

        b)        Second, the Assumption Notice does not provide a complete description of the Oracle agreement(s) the Debtor seeks to assume and assign. The Assumption Notice identifies only one agreement. However, Oracle has several active agreements with the Debtor, as well as several agreements which may have recently expired. Therefore, until Oracle has a better understanding about which contract or contracts potentially are being assumed and assigned, Oracle is unable to confirm the cure amount owed.

        c)        Third, at present, there is no stalking horse bidder. Therefore, Oracle is unable to determine whether the ultimate purchaser/assignee is capable of performing under the terms of the contract(s) the Debtor seeks to assume and assign.

        d)        Finally, to the extent any Asset Purchase Agreement ("APA") indicates that both the Debtor and the eventual purchaser(s) may enter into a Transition Services Agreement ("TSA") in connection with the proposed sale, or another agreement which may allow any unauthorized, shared use of Oracle's licenses, Oracle objects to such use.

        3.        Accordingly, Oracle requests that the Court deny the Debtor's request for authority to assume and assign, transfer, or share use of any Oracle agreements without Oracle's consent.

## II.    FACTUAL BACKGROUND

        4.        The Debtor filed the above-captioned case on June 9, 2022. The Debtor continues to operate as a debtor in possession.

        5.        On March 28, 2023, Oracle timely filed a proof of claim against the Debtor [Claim #19] in the amount of $4762.49 ("Claim Amount").

        6.        On June 30, 2023, the Debtor filed its Sale Motion. Pursuant to the Sale Motion, the Debtor proposes to sell substantially all of the Debtor's assets to an as yet unknown and/or undisclosed buyer.

7. On September 6, 2023, the Debtor filed the Assumption Notice. The Assumption Notice identifies one agreement between Debtor and Oracle described only as an "Agreement for Property Management Software" ("Oracle Agreement").

8. The stated cure for the Oracle Agreement is $4,004.99, which differs from the Claim Amount, and is inconsistent with Oracle's records.

9. On September 11, 2023, the Debtor filed a *Notice of Extension of Certain Dates and Deadlines Related to Bidding Procedures* [D.E. No. 469] ("Notice").

10. The Notice sets forth the following deadlines: (a) September 20, 2023 at 4 p.m. for sale objections; (b) October 10, 2023 at 4:00 p.m. for bids; (c) October 18, 2023 at 10:00 a.m for the auction; and (d) October 24, 2023 4:00 p.m. or two (2) business days after filing the Notice of Successful Bidder, to file objections to adequate assurance.

11. This timeline requires interested parties to file sale objections prior to knowing whether there will be any potential bids and prior to knowing the successful bidder's identity.

12. The Debtor provides no opportunity for interested parties to review any purchase related documents, including any final APA.

13. As such, Oracle is unable to determine how its rights may be affected by the sale or any potential APA entered into between the Debtor and the ultimate purchaser(s).

14. Therefore, Oracle reserves all rights to object to the APA, including a TSA or any proposed transitional or shared use of Oracle's agreements by the Debtor and the ultimate purchaser(s).

## III. ARGUMENT

### A. The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

15. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

16. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

17. The Oracle Agreement is, or pertains to, a non-exclusive license of copyrighted software.

18. Therefore, pursuant to Bankruptcy Code section 365, the Debtor may not assume and assign the Oracle Agreement without Oracle's consent.

19. For the reasons discussed herein, Oracle does not consent to the Debtor's proposed assumption and assignment at this time.

### B. The Debtor Has Not Identified The Oracle Agreement To Be Assumed and Assigned.

20. The Debtor's Assumption Notice only generally describes the Oracle Agreement the Debtor seeks to assume and assign.

21. Oracle has several active agreements with the Debtor as well as several agreements which may have recently expired. Based on the description provided in the Assumption Notice, it is unclear which agreement the Debtor hopes to assume and assign.

22. In addition, the Assumption Notice omits inclusion of an underlying master agreement or support renewal. It is impermissible for the Debtor to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreements for purposes of assumption and assignment, if that is the Debtor's intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

23. An executory contract must be assumed in its entirety and, "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Techs.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

24. Under California law,[1] made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.").

25. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

26. In order to determine which contract the Debtor wishes to assume and assign, Oracle requests that the Debtor specify the targeted contract's: (a) name and date; (b) identification number; (c) any associated support or support renewals; and (d) the governing license agreement.

27. This information will enable Oracle to evaluate whether the Oracle Agreement is supported, expired, or in default, and, if in payment default, the appropriate cure amount.

28. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtor.

29. Oracle reserves its right to be heard on this issue until after the Debtor specifically identifies the Oracle Agreement it seeks to assume and assign.

### C. The Debtor May Not Have Provided The Correct Cure Amount.

30. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

31. The Debtor has identified a $4,004.99 cure for the Oracle Agreement listed in the Assumption Notice, which differs from the Claim Amount.

32. Since the Debtor has failed to provide a complete description of the contract it seeks to assume and assign, Oracle is unable to determine whether the cure amount is accurate.

33. In addition, if the Debtor wishes to assume and assign an Oracle agreement which may have expired, Oracle would need to determine whether reinstatement fees would be due and whether reinstatement is an option.

34. Oracle needs more information about which Oracle agreement may be assumed and assigned, in order to confirm the correct cure amount.

35. Therefore, Oracle reserves its right to be heard further regarding the cure until after the contract the Debtor seeks to assume and assign is identified with enough specificity to allow Oracle to determine the correct cure amount.

### D. The Debtor Has Not Provided Adequate Assurance of Future Performance By the Assignee.

36. Before assuming and assigning any executory contract, the Debtor must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

37. There is currently no stalking horse bidder and the auction is *after* the deadline for Oracle to object to the Sale Motion and Assumption Notice[2].

38. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtor provide the following information about the purchaser(s) to which the Debtor proposes to assume and assign the Oracle Agreement: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the purchaser(s) will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle Agreement to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

39. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreement.

---

[2] Oracle is aware that pursuant to the Notice, interested parties have until October 24, 2023 @ 4pm (est) or the date that is two (2) business days after the filing of the Notice of Successful Bidder in which to file an objection to adequate assurance. However, in order to save duplicate filings, Oracle incorporates its objection to adequate assurance in this Rights Reservation.

40. Until the information described above is provided, the Debtor has not complied with the requirements of section 365(b)(1)(C).

### E. Oracle's Agreements Do Not Authorize Simultaneous Use By the Debtor and the Purchaser.

41. Oracle reserves all rights to object to the final APA between the Debtor and the ultimate purchaser(s), including to the extent the APA or any accompanying TSA includes any broad provisions regarding transitional use or shared use of the Oracle Agreement or Oracle-licensed software.

42. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreement, and would potentially result in an unauthorized "splitting" of the licenses between the Debtor and the purchaser.

43. Oracle objects to the extent that any transitional use or shared use arrangement purports to grant to both the Debtor and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

44. Oracle reserves all rights regarding any transitional use, including under any TSA, until after Oracle's review of the final TSA proposed, and an opportunity to assess how that TSA may impact Oracle, including whether the use contemplated thereunder constitutes non-compliance under the terms of the Oracle Agreement.

## IV. CONCLUSION

45. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtor's request for approval of the Assumption Notice, solely to the extent the Debtor seeks to assume and assign, transfer or share use of any Oracle agreement. Oracle reserves its right to be heard on all issues set forth herein.

| | |
|---|---|
| Dated: September 20, 2023<br>Wilmington, Delaware | **MARGOLIS EDELSTEIN**<br><br>By:     /s/ James E. Huggett<br>    James E. Huggett, Esq. (#3956)<br>300 Delaware Avenue, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-1112<br>E-mail: jhuggett@margolisedelstein.com<br><br>Amish R. Doshi, Esq.<br>**DOSHI LEGAL GROUP, P.C.**<br>1979 Marcus Avenue, Suite 210E<br>Lake Success, NY 11042<br>Tel: (516) 622-2335<br>E-Mail: amish@doshilegal.com<br><br>Shawn M. Christianson, Esq.<br>**BUCHALTER, A PROFESSIONAL CORPORATION**<br>425 Market Street, Suite 2900<br>San Francisco, California 94105-2491<br>Tel: (415) 227-0900<br><br>Peggy Bruggman, Esq.<br>Benjamin Wheeler, Esq.<br>**ORACLE AMERICA, INC.**<br>500 Oracle Parkway<br>Redwood City, California 94065<br><br>**Attorneys for Oracle America, Inc.** |