IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RIDER HOTEL, LLC,[1] | Case No. 22-10522 (JTD) |
| Debtor. | Objection Deadline: December 6, 2023 at 4:00 p.m. (ET)<br>Hearing Date: December 13, 2023 at 10:00 a.m. (ET) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE REINSTATEMENT OF THE DEBTOR'S PREPETITION LOAN PURSUANT TO THE REINSTATEMENT AGREEMENT, (II) DISMISSING THE CHAPTER 11 CASE, AND (III) GRANTING RELATED RELIEF**

By this motion (this "**Motion**"), Rider Hotel, LLC, as debtor and debtor in possession (the "**Debtor**"), seeks the entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "**Interim Order**" and the "**Dismissal Order**", respectively): (a) approving the reinstatement of the Debtor's prepetition loan with RSS GSMS2015-GC28-WI RH, LLC ("**RSS**") in accordance with the Reinstatement Agreement (as defined below), (b) dismissing this chapter 11 case, and (c) granting such related relief that is just and necessary. In support of this Motion, the Debtor submits the declarations of Timothy Dixon (the "**Dixon Declaration**") and Dan Berman (the "**Berman Declaration**"), copies of which are attached hereto as **Exhibits C** and **D**, respectively, and incorporated herein by reference, and respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Debtor initiated this chapter 11 case on the eve of a proceeding for the appointment of a receiver for its hotel business following longstanding disputes with its pre-petition secured lender regarding alleged defaults under the parties' pre-petition loan agreement (the "**Loan**

---

[1] The last four digits of the Debtor's tax identification number are 2426. The Debtor's mailing address is W6609 Pine Hill trail, P.O. Box 71, Cascade, WI 53011.

51046535.11 11/22/2023

Agreement").[2]  In filing the bankruptcy case, the Debtor sought to use the breathing spell afforded by the Bankruptcy Code to stave off the receivership and, in the meantime, negotiate a resolution of its disputes with RSS and develop a sustainable path forward for the Debtor and its business through an infusion of cash from an outside investor.

Since the outset of this bankruptcy case, the Debtor has worked hard to identify such an investor that could enable it to reinstate the Loan on sustainable terms.  Obtaining such a result, however, proved to be difficult.  In August 2023, more than one year after its bankruptcy case was filed, and faced with the possibility that no investment would be made and no reinstatement deal would be reached, the Debtor, with the support of RSS, determined that contemporaneously marketing its assets for sale would be the best option to maximize value for its estate and creditors.  Accordingly, at the same time that the Debtor continued to work on a potential reinstatement alternative, the Debtor also sought and obtained Court approval of procedures to pursue the sale of substantially all of its assets.  Notably, the Debtor's principal, Timothy Dixon ("**Mr. Dixon**"), had no involvement in the sales process on behalf of the Debtor; rather, as explained below, an independent limited managing member was appointed to oversee the process on behalf of the Debtor.

Following extensive negotiations (which negotiations occurred separately from, but simultaneously with, the sale process overseen by the independent limited managing member), the Debtor and RSS reached agreement on the terms of a reinstatement of the Loan by the end of 2023 that would permit the Debtor to address its obligations to RSS in a consensual manner, continue

---

[2]   As described in the First Day Declaration (as defined herein), on January 26, 2015, Starwood Mortgage Capital LLC ("**Starwood Mortgage**"), loaned to the Debtor the original principal amount of $19,500,000.00 (the "**Loan**") pursuant to the Loan Agreement, and the Debtor executed a corresponding Promissory Note in favor of Starwood Mortgage on the same date (the "**Note**").  The Loan Agreement and Note went through a succession of assignments, and ultimately were assigned to RSS.

the Debtor's hotel operations without disruption, and otherwise provide a pathway to exit this chapter 11 case. The Debtor has been funding this chapter 11 case solely from agreed uses of cash collateral and, at this juncture, and pending approval of the Reinstatement Agreement, RSS has consented to the continued use of its cash collateral pursuant to a budget that contemplates the prompt wind down of the bankruptcy case. Because there are no unencumbered assets of any value available to fund a chapter 11 plan and insufficient funds to support the administrative costs of pursing anything but a prompt exit from bankruptcy, the Debtor believes that reinstatement of the Loan in good standing in accordance with the terms of the Reinstatement Agreement (as defined below) and prompt dismissal of this chapter 11 case is in the best interests of its estate and creditors, and seeks approval of the relief requested herein with the support of RSS.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 305(a), 349, 363(b) and 1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), as

supplemented by rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 1017-2.

## BACKGROUND

5.  On June 9, 2022 (the "**Petition Date**"), the Debtor commenced its bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this chapter 11 case, and no statutory committees have been appointed or designated.

6.  A detailed description of the Debtor and its business, and the facts and circumstances supporting this chapter 11 case, are set forth in greater detail in the *Omnibus Declaration of Timothy Dixon in Support of Debtor's Initial First Day Motions and Related Relief* [Docket No. 24] (the "**First Day Declaration**").

**A.    Use of Cash Collateral and RSS's Secured Claim**

7.  To facilitate and fund this chapter 11 case and the Debtor's restructuring efforts, the Debtor sought authority at the outset of the case to use RSS's cash collateral. On August 3, 2022, the Court entered an order on a final basis [Docket No. 119] (the "**Cash Collateral Order**"), authorizing the Debtor's continued use of cash collateral, subject to the terms of an agreed budget (as may be modified and extended, the "**Budget**"). On November 20, 2023, the Debtor filed the *Eleventh Notice of Filing of Further Extended Cash Collateral Budget* [Docket No. 540], which attached the latest agreed-upon Budget, with a weekly forecast through the week of December 22, 2023. The Budget reflects RSS's consent to the Debtor's continued use of cash collateral as well as a cash injection from the Debtor's equity owner, which will permit the Debtor to satisfy anticipated administrative expenses and promptly wind down the estate and exit bankruptcy.

4

8. As reflected in the Cash Collateral Order and in the proof of claim filed by RSS in the bankruptcy case, RSS asserts a secured claim in an amount exceeding $24 million, which is secured by substantially all of the Debtor's assets.

**B.    The Debtor's Sale and Restructuring Efforts**

9. As noted above, despite the Debtor's extensive efforts to locate investors for a reorganization, by July 2023, no investors had emerged. Accordingly, the Debtor determined that it was in the best interests of the Debtor's estate and its creditors to contemporaneously market and sell the Debtor's assets while continuing to search for investors for a potential restructuring. The Debtor retained Jones Lang LaSalle Americas, Inc. as its real estate broker to conduct a postpetition marketing process for substantially all of the Debtor's assets, and, on August 8, 2023, filed a motion seeking, among other things, court approval of bidding procedures for the sale of the Debtor's assets [Docket No. 426] (the "**Bid Procedures Motion**"). The Debtor also appointed Keen-Summit Capital Partners, LLC, as independent limited managing member, to act on the Debtor's behalf in connection with the sale process [Docket No. 441].

10. The court entered an order approving the Bid Procedures Motion on August 25, 2023 [Docket No. 456] (the "**Bid Procedures Order**"). The Bid Procedures Order, among other things, established a deadline for parties to submit a bid for the Debtor's assets, scheduled a date and time for an auction of the Debtor's assets, and scheduled a sale hearing.

11. On September 11, 2023, the Debtor, after consulting with RSS, filed a notice extending certain dates and deadlines in the Bid Procedures Order [Docket No. 469]. The Debtor further extended certain dates and deadlines in the Bid Procedures Order on October 9, 2023 [Docket No. 503]. The extended deadlines provided the Debtor with additional time to market its assets in an effort to achieve a value-maximizing transaction for its estate and creditors.

12. During the extended postpetition sale process, the Debtor received bids from certain potential purchasers in connection with the sale of the Debtor's assets. None of the bids received proposed to purchase the Debtor's assets for a dollar amount greater than RSS's secured claim.

13. On October 23, 2023, after the Debtor and Mr. Dixon reached agreement with RSS on the terms of a reinstatement of the Loan in good standing by the end of 2023 (subject to memorialization), the Debtor filed the *Notice of Indefinite Extension of Certain Dates and Deadlines Related to Bidding Procedures* [Docket No. 521], which provided for an indefinite extension of the sale-related deadlines set forth in the Bid Procedures Order.

C. **The Reinstatement Agreement**

14. While the sale process was underway, the Debtor, Mr. Dixon (in his individual capacity) and RSS separately engaged in discussions regarding the potential reinstatement of the Loan by the end of 2023. After extensive, arm's-length negotiations, the parties reached agreement on the terms and conditions of a reinstatement on or about October 23, 2023, certain of which terms were memorialized in a letter from RSS to Mr. Dixon, dated October 23, 2023 (the "**October 23 Letter**"). The October 23 Letter, as well as additional terms and conditions of the parties' agreement to reinstate the Loan in good standing, were subsequently memorialized in the Forbearance and Reinstatement Agreement, a copy of which is attached hereto as **Exhibit E** (the "**Reinstatement Agreement**").[3] Pursuant to the terms of the Reinstatement Agreement, the Loan will be reinstated in exchange for (i) the Debtor's payment of approximately $4.9 million, subject

---

[3] The Reinstatement Agreement remains subject to final approval of the Debtor, Mr. Dixon, RSS and the Controlling Class Representative (as defined in the Loan Agreement). To the extent changes are made to the Reinstatement Agreement following the date of this Motion, the Debtor will file a notice on the docket with a redline comparing the final version of the Reinstatement Agreement with the version attached to this Motion. If the final Reinstatement Agreement or the Equity Transfer (as defined below) is not approved by RSS by the date of the scheduled hearing on this Motion, then the Debtor shall only proceed in seeking approval of the relief requested herein, including the dismissal of the Chapter 11 Case, with RSS's express written approval.

6

to a true-up of various amounts depending on the date of reinstatement (the "**Reinstatement Amount**"), (ii) the Debtor's agreement to comply with certain cash management protocols, as required under the Loan Agreement, (iii) Mr. Dixon's execution of a full recourse guaranty, (iv) Mr. Dixon's agreement to transfer or cause to be transferred all intellectual property regarding the Debtor's hotel to RSS upon a post-Closing Date (as defined below) event of default, (v) the Debtor's and Mr. Dixon's stipulation and agreement to the appointment of a receiver in the pending state court foreclosure action in the event of a post-Closing Date event of default, and (vi) prompt dismissal of this chapter 11 case, with the Debtor's equity owner injecting cash into the Debtor[4] as set forth in the Budget to fund all administrative expenses associated therewith, including, but not limited to, all accrued and unpaid Professional Fees (as defined below) and expenses approved on a final basis ($100,000 of which Debtor's equity owner already injected into the Debtor's estate on or about November 13, 2023 to fund a Budget shortfall).

15. The Reinstatement Agreement also provides for RSS's agreement to forbear from seeking to acquire or sell the Debtor's assets, or sell or otherwise transfer the Note or any other Loan document prior to December 20, 2023 (the "**Closing Date**"), which date may be extended by agreement of the parties in accordance with the October 23 Letter and the Reinstatement Agreement.

16. For the reasons set forth below, the Debtor has determined in an exercise of its sound business judgment that the reinstatement of the Loan Agreement on the terms set forth in the Reinstatement Agreement, and dismissal of this chapter 11 case, are in the best interests of the Debtor, its estate and its creditors.

---

[4] The transfer of certain direct and/or indirect equity interests in Debtor and/or Debtor's equity owner in connection with the Reinstatement Agreement (the "**Equity Transfer**") remains subject to the final approval of RSS.

**D.   Claims Process**

17.   On February 15, 2023, the Court entered the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Section 503(b)(9) Claims, and Proofs of Interest, and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 281], pursuant to which the Court established March 31, 2023, as both the general and governmental bar dates. To date, approximately 30 proofs of claim have been filed in the chapter 11 case, of which approximately $563,000 are asserted general unsecured claims. RSS has asserted the only secured claim against the Debtor in an amount exceeding $24 million. None of the proofs of claim assert priority or administrative expense claims against the Debtor.

18.   In addition to filed proofs of claim, the Debtor's *Schedules of Assets and Liabilities* [Docket No. 106] also reflect non-contingent and undisputed priority claim obligations of up to $23,000 and non-contingent and undisputed unsecured claim obligations of approximately $535,000.[5]

19.   The Debtor further believes that the estate will accrue approximately $756,000 in postpetition administrative expenses from the filing of this Motion through dismissal of this chapter 11 case, all of which the Debtor intends to pay in the ordinary course, as reflected in the Budget. Such amount does not include outstanding fees owed to professionals retained in this case (the "**Professional Fees**"), which the Debtor will satisfy as such amounts are approved and allowed in accordance with the interim compensation procedures previously approved by the Court.

---

[5]   The Debtor believes this $535,000 amount is overstated and that unsecured claim obligations are more likely in the realm of $320,000.

**RELIEF REQUESTED**

20. By this Motion, the Debtor requests entry of: (a) the Interim Order approving the Debtor's reinstatement of the Loan in accordance with the Reinstatement Agreement; and (b) the Dismissal Order, which the Debtor proposes to be entered upon the filing of a certification of counsel stating that the conditions precedent to dismissal have been met, and which shall dismiss this chapter 11 case pursuant to section 1112(b) of the Bankruptcy Code.

**BASIS FOR RELIEF REQUESTED**

A. **Reinstatement of the Loan is a Valid Exercise of the Debtor's Sound Business Judgment and is Appropriate under Sections 105(a) and 363(b) of the Bankruptcy Code.**

21. Section 105(a) of the Bankruptcy Code permits a court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

22. Under section 363(b) of the Bankruptcy Code, courts only require that a debtor "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions . . . [under the] 'business judgment test.'") (citations omitted); *see also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct."). If a debtor puts forth such a sound business purpose,

9

a presumption arises that the debtor's decision was made "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

23.     The Debtor believes that reinstatement of the Loan, pursuant to the terms of the Reinstatement Agreement, is in the best interests of the Debtor's estate and creditors. Given the size of RSS's claim and its lien on substantially all of the Debtor's assets, the Debtor's path forward depends upon RSS's cooperation and its agreement with the treatment of its claim. Reinstating the Loan by bringing it current will allow the Debtor to resolve its disputes with RSS and continue its operations in the ordinary course of business without disruptions, and without having the distraction or costs of a chapter 11 bankruptcy process.

24.     While the sale process generated robust interest in the Debtor's hotel, the process also posed meaningful risk that offers received would not be sufficient to satisfy (or at least come close to satisfying) RSS's asserted secured claim, let alone the claims of unsecured creditors. On the other hand, reinstatement of the Loan allows the Debtor to address its obligations to RSS in a consensual manner and efficiently exit bankruptcy with unsecured creditors maintaining their claims to be satisfied in the ordinary course outside of bankruptcy.

25.     The Debtor also believes it is in the best interests of the estate for hotel operations to continue without disruptions that may be caused by a transition of ownership or by continuation of the chapter 11 case. For these reasons, the Debtor submits that bringing the Loan current and reinstating the Loan in good standing in accordance with the terms and conditions set forth in the Reinstatement Agreement is an exercise of the Debtor's sound business judgment, and is in the best interests of the Debtor, its estate and its creditors.

B.   **This Case Must be Dismissed if the Elements for "Cause" are Shown under Section 1112(b) of the Bankruptcy Code.**

26. Under section 1112(b) of the Bankruptcy Code, a court shall "convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, *whichever is in the best interests of creditors and the estates*, if the movant establishes cause."  11 U.S.C. § 1112(b) (emphasis added); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  A determination of "cause" is made by the court on a case-by-case basis.  *Albany Partners*, 749 F.2d at 674.

27. The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *see also In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); *Albany Partners*, 749 F.2d at 674 (same).

(1)   **"Cause" for Dismissal Exists under Bankruptcy Code Section 1112(b)(4)(A)**

28. Section 1112(b) of the Bankruptcy Code further provides a nonexclusive list of 16 grounds for dismissal.  11 U.S.C. § 1112(b)(4)(A)–(P); *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is non-exhaustive).  One such ground exists where a party shows that (a) there is a substantial or

11

n/a
n/a

continuing loss to or diminution of value of the estate and (b) the debtor does not have a "reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). "As provided in the plain language of the Code, courts have held that if one of the grounds for dismissal or conversion is § 1112(b)(4)(A) . . . the § 1112(b) inquiry ends; the case must be converted or dismissed." *In re Korn*, 523 B.R. 453, 465 n.28 (Bankr. E.D. Pa. 2014).

29. Here, the Debtor satisfies the two-fold inquiry of section 1112(b)(4)(A) of the Bankruptcy Code such that dismissal is appropriate. First, there is a continuing loss or diminution to the value of the estate insofar as Professional Fees and other administrative costs of operating the chapter 11 case are continuing to accrue, *without any corresponding benefit to the estate*. Indeed, to the extent the Reinstatement Agreement is approved, the Debtor will not require the benefits of the "breathing spell" to negotiate with RSS or to provide a vehicle through which it can address the claims of its other creditors. Rather, with the terms of the Reinstatement Agreement both permitting the Debtor to satisfy obligations to RSS and to continue operating in a smooth and sustainable manner, the Debtor will be able to address creditor obligations without the costs of a chapter 11 proceeding, stave off the threat of the receivership and resolve the Debtor's ongoing disputes with RSS concerning the Debtor's alleged defaults. The Loan simply will be brought current and reinstated in good standing, postpetition ordinary course administrative claims will be satisfied in the ordinary course, and other categories of claims will "ride through" the dismissal and be paid outside of the chapter 11 bankruptcy process. As such, the continued accrual of fees and costs related to this chapter 11 case is unnecessary and will only diminish the Debtor's estate, to the detriment of its creditors and its ongoing operations.

30. Furthermore, in the absence of approval of the Reinstatement Agreement and prompt dismissal of the bankruptcy case, the Debtor does *not* have a reasonable likelihood of

rehabilitation. The Debtor's latest Budget reflects RSS's consent to a limited budget for the prompt winddown of the bankruptcy case through the week ending December 22, 2023. Absent RSS's consent to the limited budget and the cash injection from the Debtor's equity owner agreed to as part of the Reinstatement Agreement (and reflected in the Budget), the Debtor believes it would be cash flow negative by the week ending December 12, 2023. In fact, the Debtor required a cash infusion on or about November 13, 2023 and Debtor's equity owner made a capital payment to Debtor's operating account in the amount of $100,000.

31.     Under these circumstances, the Debtor's path forward depends upon RSS's cooperation and its agreement with the treatment of its claim. The Reinstatement Agreement reflects such cooperation and provides a consensual path towards the conclusion of this case. Unless RSS agreed to significantly compromise its secured claim (which it has not agreed to do), the Debtor would have no ability to fund any other categories of claims, including administrative claims, required to be paid in full under a plan and thus has no likelihood of rehabilitation through a plan. Drafting and seeking confirmation of a plan under these circumstances would be time-consuming, prohibitively expensive, and would only further increase administrative costs to the detriment of the Debtor, its estate and all stakeholders.

### (2)     Dismissal is in the Best Interests of the Debtor's Estate

32.     Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the estate and creditors. *See In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), aff'd 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988).

33. Here, dismissal of the Debtor's chapter 11 case is in the best interests of the Debtor's estate for the same reasons set forth above, *i.e.*, it will enable the Debtor to address RSS's secured claim and the Debtor's alleged defaults in a consensual manner, continue its hotel operations without disruption, satisfy postpetition administrative claims as set forth in the Budget, and satisfy other claims in the ordinary course and outside the context of the bankruptcy, while at the same time avoiding further administrative costs associated with chapter 11.

34. Dismissal is also in the best interests of creditors because any claims not satisfied prior to the entry of the Dismissal Order simply will ride through the bankruptcy process. This is beneficial because rather than potentially receiving pennies on the dollar through a plan of reorganization or liquidation, the reinstatement of the Loan and dismissal of this chapter 11 case will enable the Debtor's creditors to retain their claims against the Debtor. Therefore, the Debtor's creditors can pursue the full amount of their respective claims outside the chapter 11 bankruptcy process.

35. In contrast, the alternative to dismissal—conversion to chapter 7—would *not* serve the best interests of the Debtor's estate and creditors because the creditors likely would not recover the full value of their claims in a chapter 7 case. One element of the best interests test focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. *In re Clark*, 1995 WL 495951, at 5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise. *See id.* Here, dismissal is a superior alternative to a chapter 7 proceeding because conversion to chapter 7 would impose delays and substantial and unnecessary additional administrative costs upon the Debtor's estate with no guarantee that the estate and creditors would receive better consideration than provided under this Motion.

36.     The best interests of creditors test may also be met where an interested party, other than the debtor, feels that dismissal is a proper disposition of the case. *See, e.g.*, *In re Mazzocone*, 183 B.R. at 414 (factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7, where debtor and United States Trustee both favored dismissal). Here, RSS, which is the Debtor's largest creditor and the only secured creditor, is supportive of the dismissal of this chapter 11 case in the manner requested herein.

37.     Numerous courts, both in this district and throughout the country, have approved orderly dismissals under similar circumstances to the Debtor's case, where the debtor lacks the requisite financial ability to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. *See, e.g.*, *In re YouFit Health Clubs, LLC*, Case No. 20-12841, D.I. 966 (Bankr. D. Del. 2021); *In re SBSH Winddown, Inc.*, Case No. 18-10039, D.I. 467 (Bankr. D. Del. 2020); *In re Fresh-G Restaurant Intermediate Holding, LLC*, Case No. 16-12174, D.I. 1073 (Bankr. D. Del. 2017); *In re Hospitality Liquidation I, LLC (f/k/a HSS Holding, LLC)*, Case No. 13-12740, D.I. 447 (Bankr. D. Del. 2014). Accordingly, dismissal of the chapter 11 case is in the best interests of the Debtor's estate and its creditors.

C.  **Dismissal of this Chapter 11 Case is Also Warranted under Section 305(a)(1) of the Bankruptcy Code.**

38.     Alternatively, cause exists to dismiss this chapter 11 case pursuant to section 305(a) of the Bankruptcy Code, which provides, in pertinent part:

(a)     The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1)     the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

39. In applying section 305(a), courts have considered a wide range of factors, including, but not limited to:

    (i.)    economy and efficiency of administration;

    (ii.)    whether federal proceedings are necessary to reach a just and equitable solution;

    (iii.)    whether there is an alternative means of achieving an equitable distribution of assets; and

    (iv.)    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

*See In re Crown Village Farm, LLC*, Case No. 09-11522 (KG), U.S. Bankr. LEXIS at *24 (Bankr. D. Del. June 12, 2009) (enumerating section 305(a) factors and denying motion only because dismissal or abstention would have a deleterious effect on the administration of the debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); *see also In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996). However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." *Mazzocone*, 200 B.R. at 575.

40. Dismissal of this case is warranted under Bankruptcy Code section 305(a)(1) for the same reasons that "cause" exists to dismiss this case pursuant to section 1112(b)—dismissal of the case represents the most cost-effective alternative for the Debtor's emergence from bankruptcy and the payment of amounts owed to creditors under the circumstances. The Debtor will exit its chapter 11 case with its secured debt reinstated and will be permitted to operate its business without disruption. At the same time, the Debtor's unsecured creditors will retain their claims and may pursue full recovery thereon against the Debtor outside of the bankruptcy process.

Accordingly, dismissal of this chapter 11 case is in the best interests of the Debtor and its creditors and is appropriate under section 305(a)(1) of the Bankruptcy Code.

**D.**     **The Certification Process and Request for Entry of the Dismissal Order is Reasonable Under the Circumstances.**

41.     The Debtor further requests that the chapter 11 case be dismissed effective immediately upon the Debtor filing a certification of counsel (the "**Certification**") requesting entry of the Dismissal Order. The Certification will verify that (i) the Debtor has paid in full all quarterly fees of the U.S. Trustee, (ii) the Debtor has filed all monthly operating reports, including the report for the month in which the case is to be closed, (iii) each of the Professional's fees have been approved on a final basis and paid, and (iv) closing has occurred in connection with the Reinstatement Agreement.

42.     The Debtor proposes to serve the Certification on the general service list established in the chapter 11 case in accordance with Bankruptcy Rule 2002, including the U.S. Trustee, without serving the Certification on the entire matrix of creditors or all parties in interest in the chapter 11 case, as such parties will receive reasonable notice of the proposed dismissal through notice of the hearing on this Motion.

**E.**     **All Prior Stipulations, Rulings and Orders Should Remain Binding and Should Continue to Have Full Force and Effect.**

43.     The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. *See* 11 U.S.C. § 349(b). A bankruptcy court, may, however, "for cause, order[] otherwise . . ." *Id.* Courts in this jurisdiction have regularly maintained the enforceability of orders, including those approving releases and settlements, after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See*, *e.g.*, *In re SBSH Winddown, Inc.*, Case No. 18-10039 (CSS) (Bankr. D. Del. Aug. 21, 2020) (giving continued effect post-dismissal to releases, stipulations, settlements and orders entered

17

during the bankruptcy case); *In re Real Industry, Inc.*, Case No. 17-12464 (KJC) (Bankr. D. Del. Dec. 18, 2018) (same); *In re Sunco Liquidation, Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) (giving continued effect to orders entered throughout the pendency of the chapter 11 cases).

44. In the present case, the Debtor is seeking to wind down this chapter 11 case pursuant to a heavily negotiated Reinstatement Agreement that will permit it to emerge from bankruptcy in a cost-effective manner, for the benefit of its estate, and the Debtor has carried out this chapter 11 case only through consensual use of cash collateral permitted under the Cash Collateral Order, which contains stipulations and protections that were a substantial and necessary inducement for RSS to permit such use. Under these circumstances, cause exists to permit all prior orders, stipulations and rulings entered by the Court to be given continued effect, notwithstanding the requested dismissal.

F. **The Court Should Terminate Stretto's Claims and Noticing Services.**

45. The Debtor also requests that the Dismissal Order terminate the claims and noticing services provided by Stretto, Inc. ("**Stretto**") as the Debtor's retained claims and noticing agent. Upon termination of Stretto's claims and noticing services, and except as otherwise provided herein, the Debtor requests that Stretto shall have no further obligations under its engagement to the Court, the Debtor, the Debtor's estate, or any other party in interest with respect to the claims and noticing services in this chapter 11 case.

46. Pursuant to Local Rule 2002-1(f)(ix), within fourteen days of entry of the Dismissal Order, Stretto will (i) forward to the Clerk of the Court an electronic version of all imaged proofs of claim, (ii) upload the creditor mailing list into CM/ECF, and (iii) file a final claims register containing claims asserted in the Debtor's case on the docket.

## **NOTICE**

47.     Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to RSS; (iii) the Debtor's 20 largest unsecured creditors; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (v) the creditor matrix.  The Debtor submits that, in light of the relief requested herein, no other or further notice need by given.


[remainder of page left intentionally blank]

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests entry of (i) the Interim Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, (ii) the Dismissal Order, substantially in the form attached hereto as **Exhibit B**, upon the filing of the Certification, and (iii) such other relief as the Court may deem just and appropriate.

Dated: November 22, 2023
Wilmington, Delaware

**SAUL EWING LLP**

By:   */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
Paige N. Topper (DE Bar No. 6470)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
mark.minuti@saul.com
monique.disabatino@saul.com
paige.topper@saul.com

-and-

Barry A. Chatz (admitted *pro hac vice*)
Michael L. Gesas (admitted *pro hac vice*)
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
barry.chatz@saul.com
michael.gesas@saul.com

-and-

**CARLSON DASH, LLC**
Kurt M. Carlson (admitted *pro hac vice*)
Martin J. Wasserman (admitted *pro hac vice*)
10411 Corporate Drive, Suite 100
Pleasant Prairie, WI 53158
Telephone: 262-857-1600
kcarlson@carlsondash.com
mwasserman@carlsondash.com

*Counsel to the Debtor and Debtor in Possession*